[Civ. No. 17461.   First Dist., Div. Two.   May 29, 1957.]

ALICE SOMMER DUNCAN, Appellant, v. FREDERICK KAHN et al., Respondents.

Aiken, Kramer & Aiken, Bauer E. Kramer and Fred V. Cummings for Appellant.

Matt Wahrhaftig, J. D. Cooper, Jack Wahrhaftig, Robert Wahrhaftig and McKee, Tasheira & Wahrhaftig for Respondents.

DRAPER, J.—This action concerns a trust established in his lifetime by Eugene Sommer, an unmarried man. He was the owner of 538 shares of the capital stock of Sather Gate Book Shop. Defendant Kahn owned 339 shares and one share was held by a third person. By declaration of trust dated September 29, 1936, Sommer transferred his shares, in trust, to defendant Kahn. By addendum of the same date, Sommer designated defendant Akers as cotrustee. Pursuant to right reserved, this declaration was amended November 1, 1940. As amended, the trust named four beneficiaries, who were to share equally. Plaintiff was one of these. Upon the death of any beneficiary except Siegfried Sommer, his interest in the trust was to pass to his heirs. As to Siegfried, it was provided that if he shall "predecease me or if he shall die after I do but prior to the distribution of this trust," his interest should not go to his heirs, but was to vest equally in the remaining beneficiaries or their survivors.

The trustor, Eugene Sommer, died September 21, 1941. The issues here involved arose after his death, and we are concerned only with the provisions of the declaration referring to the "trust after my death." The trust was to continue for 10 years after the death of the trustor, but was to end sooner upon the death of defendant Kahn or upon the purchase of the stock by Kahn, or upon Kahn's sale of the assets of the corporation. The declaration also provided: "Notwithstanding anything hereinbefore set forth, I hereby authorize you at any time to terminate this trust in your absolute discretion, notwithstanding the fact that the said period of ten years has not elapsed." The declaration further specifically authorized defendant Kahn to purchase the trust shares from himself as trustee, at book value, excluding therefrom good will or going concern value. The trust instrument stated, after authorizing such purchase by the trustee Kahn, "it is my hope that you may be able to do so to the end that the institution which I helped to build up may be perpetuated by you." Kahn had been associated with trustor in the book shop for many years, and was vice-president of the corporation, trustor being president, at the time of the declaration of trust. The trust instrument provided that no beneficiary should have the right to sell or anticipate his interest. Upon termination of the trust, whether by expiration of the 10-year period from trustor's death or by one of the earlier events specified, the trust property (whether it was then cash or remained corporate shares) was to go to the

beneficiaries equally. It is clear that this was to occur despite the provision against alienation or advance, and despite the provision that Siegfried's interest, if he died before termination, was not to go to his heirs. The declaration further specified that the trustee should "not be liable or accountable to any of the beneficiaries for any losses or liabilities" incurred while he was managing the corporation or voting the stock, and authorized him to vote the stock and manage the corporation in his "absolute discretion; but in the event that you may find it necessary to advise with counsel, then the opinion of counsel in writing signed by him . . . shall be a full protection and justification to you for anything suffered or done in good faith and in accordance with such opinion."

Shortly after trustor's death, two of the beneficiaries, Levy and Lazarus, desired to realize upon all or a portion of their interests in the trust. Through their attorney, they opened negotiations to this end. In November, 1945, these beneficiaries made written request to the trustees for partial termination of the trust, this termination to be effective as to 75 shares each. They assigned such shares to defendant Kahn for an agreed price which they recognized was less than book value. The trustees, after having received the written opinion of their counsel (the same attorney who had drawn the declaration of trust), terminated the trust as to 75 shares of the interest of Levy and a like amount as to Lazarus, surrendered the certificate for 538 shares issued to them as trustees, and caused new certificates for 150 shares to Kahn and 388 shares to the trustees to be issued. Thereafter, the interests of Levy and Lazarus were treated as entitling them to 59½ shares each, rather than their original beneficial interest in 134½ shares each.

In 1948 Siegfried Sommer, then 81, was ill and in need. He, his wife and his daughter urged defendant Kahn to terminate the trust. On May 7, 1948, Kahn, again acting upon advice of counsel, gave notice of termination to himself and Akers, as trustees. The two trustees then joined in surrendering the stock certificate held by them as trustees, and in causing issuance, in exchange therefor, of certificates for 134½ shares each to plaintiff and Siegfried Sommer, and for 59½ shares each to Levy and Lazarus. The certificate issued to Siegfried was, by arrangement made before the termination, sold by him to Kahn for a price less than book value. Plaintiff was notified of the termination of the trust, and on May 13, 1948, receipted for the certificate issued to her in distribution

of the trust estate. Siegfried Sommer died September 1, 1948.

This action by plaintiff was filed December 16, 1955. She complained of both the 1945 "partial termination" and the 1948 termination. Her complaint prayed for an accounting by both trustees, for a decree that Kahn holds plaintiff's "distributive share" of 44.83 shares of the interest of Siegfried as constructive trustee for plaintiff, and for compensatory and punitive damages as against defendant Kahn.

Upon detailed findings of fact, the trial court concluded that plaintiff was not entitled to recover. Judgment and decree was entered in favor of defendants. Plaintiff appeals.

█ The court found that the 1945 transaction was entered into by Levy and Lazarus with full knowledge of all relevant facts, and of the motives of the trustees, and without the use of any influence by the trustees. It also found that this transaction "did not cause or result in any decrease in the value of plaintiff's beneficial interest in the trust." This finding is fully supported by the evidence. Under no contingency could the interests of Levy and Lazarus revert to the other beneficiaries. Their heirs, unlike those of Siegfried, were not excluded from participation in the trust. The loss, if any, was theirs alone. Their alienation of a portion of their interests had no effect upon plaintiff's trust interest or its value. Plaintiff's claimed remedy cannot be predicated upon an asserted injury to Levy and Lazarus. Plaintiff argues that each share of a majority stock holding has a higher market value than a share in a minority interest, and that the Levy-Lazarus transaction, which left the trust as owner of only a minority of the total shares of the corporation, caused a decrease in the value of plaintiff's beneficial interest. The testimony of one witness is relied upon to support this view. However, there was no showing that this witness considered the peculiar circumstances of this trust, which contemplated purchase by the trustee at book value, rather than sale in the open market, if a sale were made; and which did not require any sale of the trust shares during the period of the trust. In fact, no sale of the shares, as a block, was made during the term of the trust. Also, cross-examination of the same witness produced testimony susceptible of the construction that no such loss would be suffered. Thus there was at most a conflict of evidence, to be resolved by the trial court. Its finding against plaintiff will not be disturbed here. It is unnecessary to consider the validity of the partial termination since plaintiff,

having suffered no injury, can invoke no remedy based upon this alleged breach.

As to the total termination of the trust in 1948, plaintiff argues that the interest of Siegfried Sommer would cease in the event of his death before termination, that this would increase the interests of the other beneficiaries, including plaintiff, and that thus when Siegfried died after termination of the trust, but before the expiration of 10 years, plaintiff was entitled to one-third of his 134½ shares. This argument would be sound if the trust were required to continue for the full 10-year period from Eugene's death. But that was not the trust provision. The declaration specifically vested in Kahn full authority "to terminate the trust in your absolute discretion, notwithstanding the fact that the said period of 10 years has not elapsed." There is no question that the interest of plaintiff in the Siegfried share, contingent upon his death before the end of the trust period, was defeasible by termination of the trust. The court found that this termination was not intended to secure any personal advantage to Kahn and that it was not in violation of any fiduciary duty of the trustees. This finding is supported by substantial evidence. Since the trustees' motives are found to be sound, the 1948 termination of the trust was valid, and plaintiff's claim must fall.

Plaintiff also contends that Kahn alone terminated the trust in 1948, and that the trust declaration required action by both trustees. There is an ambiguity in the declaration. As originally drawn, it named only Kahn. By addendum of the same date, Akers was added as a trustee, and wherever "powers or duties are conferred or imposed upon [Kahn] as trustee," such powers and duties are made those of Kahn and Akers as joint trustees. The right to Kahn to terminate the trust was not vested in Kahn "as trustee," and respondent argues strongly that this is one of the several powers which the instrument reposed in Kahn as an individual. In any event, it is clear that Akers, although he did not sign the "notice of termination" addressed to Kahn and himself, did receipt therefor and join in all acts necessary to terminate the trust. Far from objecting to the termination, he participated in it. This ratification is sufficient (*Hill* v. *Peoples*, 80 Ark. 15 [95 S.W. 990]), and it would be hypertechnical, in this action commenced seven years after the termination, to vacate the termination for failure of one trustee to execute the written notice upon which both thereafter acted jointly.

In view of the above conclusions, it is unnecessary to consider the other points raised by appellant. It follows that Kahn was entitled to judgment quieting title in his shares, as prayed in his cross-complaint.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied June 28, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1957.